# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, <br> Plaintiff, <br> v. <br> BUENROSTRO, et al., <br> Defendants. | Case No. 17cv2345-MMA (JLB) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 33] |

Plaintiff Lance Williams, a California prisoner currently incarcerated at California Men's Colony, located in San Luis Obispo, California, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges various violations of his First, Eighth, and Fourteenth Amendment rights by correctional officers at R. J. Donovan Correctional Facility in San Diego, California. Defendants Buenrostro, Steadman, and Ashbury move for summary judgment as to all claims pursuant to 42 U.S.C. § 1997e(a). *See* Doc. No. 33. Plaintiff filed a response in opposition to the motion, to which Defendants replied. *See* Doc. Nos. 35, 36. The Court took the matter under submission without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court **GRANTS** Defendants' motion for summary judgment.

1

## I. Procedural Background

Plaintiff initially filed his civil rights complaint pursuant to 42 U.S.C. § 1983 on November 18, 2017, quickly followed by an amended complaint on December 11, 2017. *See* Doc. Nos. 1, 7. Plaintiff did not prepay the civil filing fee required to commence a civil action at the time he filed his complaint; instead, he moved for leave to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a). *See* Doc. No. 2.

On January 31, 2018, this Court reviewed Plaintiff's amended complaint, as well as his litigation history, and denied his motion to proceed IFP pursuant to 28 U.S.C. § 1915(g).[1] *See* Doc. No. 11. The Court identified seven prior federal civil actions and appeals filed by Plaintiff in federal court while he was incarcerated that had been dismissed as frivolous or for failing to state a plausible claim for relief. The Court further found that Plaintiff did not plausibly allege that he faced "imminent danger of serious physical injury" at the time he instituted this action. *See* Doc. No. 11 at 4-6.[2] In addition, the Court noted that even if Plaintiff were entitled to proceed IFP, he plainly admitted that he failed to exhaust his administrative remedies prior to filing suit, as required by 42 U.S.C. § 1997e(a). *Id.* at 9-10. Accordingly, the Court dismissed the action without prejudice based on Plaintiff's failure to prepay the filing fees required by 28 U.S.C. § 1914(a). *Id.* at 11.

Plaintiff appealed. *See* Doc. No. 12. On March 18, 2019, the Ninth Circuit reversed this Court's IFP determination in an unpublished memorandum and remanded

---

[1] Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not proceed IFP:

> . . . if [a] prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). "This subdivision is commonly known as the 'three strikes' provision." *Andrews v. King*, 398 F.3d 1113, 1116 n.1 (9th Cir. 2005).

[2] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

the case for further proceedings. *See Williams v. Buenostrome, et al.*, No. 18-55191, slip op. at 2 (March 18, 2019) (Doc. No. 16). Specifically, the circuit court found Plaintiff's allegations that Defendant Buenrostro "repeatedly assaulted him without justification, encouraged other inmates to attack him, and threatened his life," were sufficient to plausibly allege imminent danger despite the fact that Plaintiff had been moved to a different building by the time he filed his amended complaint. *Id.* The circuit court further acknowledged that while this Court "correctly point[ed] out that Williams' failure to exhaust is clear from the face of the complaint," it was not also clear at this "early stage of the proceedings, before defendants have appeared, that administrative remedies were in fact available to Williams." *Id.* at 3. Therefore, the panel remanded the case so that "the parties may litigate whether administrative remedies were available." *Id.*

On April 9, 2019, the Ninth Circuit issued its mandate pursuant to Federal Rule of Appellate Procedure 41(a). *See* Doc. No. 18. Thereafter, this Court spread the mandate and re-opened the case for further proceedings consistent with the Ninth Circuit's judgment. *See* Doc. No. 17. The Court screened Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and determined that Plaintiff's claims were nonfrivolous. The Court directed the United States Marshal to effectuate service of the amended complaint pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3) as to Defendants Buenrostro,[3] Steadman, and Ashbury. *See* Doc. No. 19.

## II. **Plaintiff's Allegations**

### B. Factual Allegations

Plaintiff claims that on October 18, 2017, Defendant Correctional Officer Buenrostro "defame[d]" him "by yelling to the entire dorm" that he was "SNY," gay, and a snitch. Doc. No. 7 at 3. Plaintiff claims Buenrostro further said "[Y]ou guys know what to do to snitches[:] cut him up and get him off the yard." *Id.* After Plaintiff

---

[3] Plaintiff erroneously sued Defendant Buenrostro as "Buenostrome." *See* Doc. No. 7.

reported Buenrostro to a sergeant, he claims Buenrostro approached him, and "ma[de] threats saying he was going to have his C.I. (confidential informant) inmates attack [him]." *Id.* at 4. Plaintiff further claims Buenrostro told him he would "plant a knife in [his] cell and send him to Corcoran Prison SHU program," and "jammed [his] shoulder and elbow into [his] sternum." *Id.*

According to Plaintiff, Buenrostro repeatedly searched his cell during the months of October and November 2017, after which legal paperwork and other personal items "came up missing." *Id.* at 5. Plaintiff claims that Buenrostro "made another threat on [Plaintiff's] life in front of everyone." *Id.* On November 7, 2017, after he complained to a sergeant that Buenrostro had failed to supply him with a cell search receipt, Plaintiff claims he "found a makeshift weapon tape[d] to the bottom of [his] bed," but he removed it, and "threw it in the trash." *Id.*

Two days later, on November 9, 2017, Plaintiff claims Buenrostro "made another threat," and "call[ed] him a snitch for a previous appeal." *Id.* at 6. Plaintiff contends Buenrostro told him he had "better withdraw it or he w[ould] make [H]annibal [L]ector look like a bitch when it comes to what he [would] do to [Williams]." *Id.* Later the same day, Plaintiff claims Buenrostro closed a cell door on him from the control booth, which caused "severe injuries to [his] groin, back, chest, right hip, and right ankle." *Id.*

On November 14, 2017, Plaintiff was called to medical for the injuries he sustained on November 9, 2017. *Id.* at 7. When he explained that Buenrostro had closed a cell door on him and described his injuries to Defendant Steadman, a Registered Nurse, Plaintiff contends that she accused him of lying, said that Buenrostro was her friend, questioned Plaintiff's placement in the "EOP," threatened to "call [his] clinician," and "kicked [him] out without attending to [his] injuries." *Id.* Afterward, Plaintiff claims Steadman falsified a medical report related to the November 9, 2017 incident. *Id.* at 8.

Finally, on November 26, 2017, Plaintiff was interviewed by Defendant Lieutenant Ashbury regarding his "602 appeal on Defendant Officer Buenrostro." *Id.* at 9. Plaintiff reported that he was a "victim of [Buenrostro's] multiple acts of harassment, threats,

4

1 [and] assaults," but he objected when Ashbury authorized his transfer to Building 2 on grounds that it would be retaliatory and "endanger [his] safety because [he] had issues with 2 officers in Building 2." *Id.* at 9-10. Plaintiff was "moved [to Building 2] against [his] will the next day." *Id.* at 10.

**III. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on two grounds. First, with respect to Plaintiff's claims against Buenrostro and Steadman, Defendants argue that Plaintiff did not exhaust his administrative remedies *prior* to filing his amended complaint in this action as required by the PLRA. Second, Defendants argue that Plaintiff never exhausted his administrative remedies with respect to his claim against Defendant Ashbury. In response, Plaintiff contends that the administrative grievance process was not available to him due to Defendant Buenrostro's repeated threats.[4]

    A.    <u>Legal Standard</u>

"The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("exhaustion is mandatory . . . unexhausted claims cannot be brought in court"). "There is no question that exhaustion is mandatory under the PLRA[.]" *Jones v. Block*, 549 U.S. 199, 211 (2007) (citation omitted). "[T]he exhaustion question in PLRA cases should be decided as early as feasible." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).

The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their

---

[4] Plaintiff also claims that he thought the Ninth Circuit had excused him from the exhaustion requirement "because he was [] in imminent danger of serious physical injury." Doc. No. 35 at 1. The Ninth Circuit did nothing of the sort. Rather, the Ninth Circuit found that it was "not clear" from the face of Plaintiff's complaint whether "administrative remedies were in fact available" Plaintiff. Doc. No. 18 at 2-3. The circuit court then remarked that on remand the parties could litigate the issue.

responsibilities before being haled into court." *Jones*, 549 U.S. at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). Therefore, regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process if that process remains available to him. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies ... available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (original emphasis) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862; *see also Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable."). Grievance procedures are available if they are "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738); *see also Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) ("To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'") (quoting *Albino*, 747 F.3d at 1171). Importantly, the PLRA requires that prisoners, when grieving their appeal, adhere to the prison's "critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006).

In the Ninth Circuit, a motion for summary judgment is generally the appropriate vehicle for raising the plaintiff's failure to exhaust administrative remedies because "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216; *see also Albino*, 747 F.3d at 1170 ("[A] motion for summary judgment, as opposed to an unenumerated Rule 12(b) motion, [is the proper procedural device] to decide exhaustion"). The burden is on the defendant to prove that there was an available administrative remedy that the plaintiff failed to exhaust. *See Albino*, 747 F.3d at 1172.

If the defendant meets that burden, the burden shifts to the prisoner to present evidence showing that there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him. *See id.*

The Court must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S. Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial and, in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. *See Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

B. <u>CDCR's Exhaustion Requirements</u>

The California Department of Corrections and Rehabilitation ("CDCR") has a procedure by which a prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his ... health, safety, or welfare." Cal Code Regs., tit. 15 § 3084.1(a). Since January 28, 2011, and at the time of the events in question, Title 15 of the California Code of Regulations requires three formal levels of appeal review. Thus, in order to properly exhaust, a California prisoner must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," Cal. Code Regs., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a).

The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), the prisoner must "within 30 calendar days ... upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of

7

administrative review, which is "conducted by the hiring authority or designee at a level no lower than Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2).

"The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal and shall be conducted by a designated representative under the supervision of the third level Appeals Chief or equivalent. The third level of review exhausts administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated."[5] *Id.* § 3084.1(b); *see also* CDCR Operations Manual § 541100.13 ("Because the appeal process provides for a systematic review of inmate and parolee grievances and is intended to afford a remedy at each level of review, administrative remedies shall not be considered exhausted until each required level of review has been completed.").

### C. Analysis

Defendants Buenrostro and Steadman argue that Plaintiff did not properly exhaust his available administrative remedies prior to filing his amended complaint. In addition, Defendant Ashbury argues that Plaintiff never exhausted his grievance as to Plaintiff's claims against him. In support of their arguments, Defendants submit the declarations of J. Vila ("Vila Decl."), Litigation Coordinator for the Office of Appeals (OOA), E. Frijas ("Frijas Decl."), Correctional Counselor II Appeals Coordinator at RJD, and S. Gates ("Gates Decl."), Custodian of Records for California Correctional Health Care Services (CCHCS). *See* Doc. Nos. 33-5, 33-6, 33-7. Defendants argue that the testimony of these three individuals and the supporting evidence submitted with their declarations establish without dispute that the prison administrative grievance process was available to

---

[5] For example, "[a] second level of review shall constitute the department's final action on appeals of disciplinary actions classified as 'administrative' as described in section 3314, or minor disciplinary infractions documented on CDC[R] Form 128-A (rev. 4-74), Custodial Counseling Chrono, pursuant to section 3312(a)(2), and shall exhaust administrative remedy on these matters." CAL. CODE REGS., tit. 15 § 3084.7(b)(1).

8

Plaintiff; Plaintiff filed multiple grievances against Defendants Buenrostro, Steadman, and Ashbury; Plaintiff did not exhaust the grievance process as to Defendant Ashbury; and while Plaintiff exhausted fully as to Buenrostro and Steadman, he did not do so until after he had filed his amended complaint.

The Court considers Plaintiff's use of the prison grievance process with respect to his claims against each Defendant in turn.

### 1. *Claims against Defendant Buenrostro*

As set forth above, Plaintiff's claims against Defendant Buenrostro arise out of events that initially occurred on October 18, 2017, with the last interaction between Plaintiff and Buenrostro occurring on November 9, 2017. *See* Doc. No. 7 at 3-6.

#### a. Grievance Log No. RJD-A-17-06550

On November 7, 2017, Plaintiff submitted a grievance, assigned Log. No. RJD-A-17-6550, in which he claimed to have been "continuously being harassed by Officer Buenrostro after he was counseled to stop his activity against" Plaintiff. *See* Vila Decl. at ¶ 7, Ex. B at 18. Plaintiff alleged that Buenrostro "made a threat" on his life, searched his cell, took items from his cell, and left a "makeshift weapon" taped to the bottom of his bed." *Id.* at 20. Plaintiff claims Buenrostro was "letting inmates in [his] cell to steal and plant items when [he is] gone." *Id.*

This grievance was "partially granted" at the Second Level of review on November 22, 2017. *Id.* at 19, 21-22. Plaintiff was informed that if he was "dissatisfied with the Second Level response" he could submit his grievance to the Third Level of review and was given instructions as how he could proceed. *Id.* at 19, 22. Plaintiff marked on the form that he was "dissatisfied" with the decision as to his claim that "staff did not violate CDCR polices." *Id.* at 19. On March 19, 2018, approximately three months after Plaintiff filed his amended complaint in this action, a "Third Level Appeal Decision" was issued denying Plaintiff's appeal. *Id.* at 25-26. Plaintiff was informed that "[t]his decision exhausts the administrative remedy available to the appellant within the CDCR." *Id.* at 26.

9

17cv2345-MMA (JLB)

### b. Grievance Log No. RJD-A-17-06583

On November 12, 2017, Plaintiff filed a grievance, assigned Log. No. RJD-A-17-06583, in which he claimed that Buenrostro "continued with his threats, harassment" and committed "assault & battery" on Plaintiff. *See* Vila Decl. at ¶ 7, Ex. C at 28. Plaintiff alleged that Buenrostro told him to withdraw his previous grievance or Buenrostro would "make Hannibal Lector look like a bitch when it comes to what he would do to [Plaintiff]." *Id.* at 30. Plaintiff further claimed that Buenrostro told the tower officer to close Plaintiff's cell door, while he was standing next to the door, causing Plaintiff to be injured. *See id.*

This grievance was "partially granted" on November 29, 2017 at the Second Level of review, but it was determined that staff "did not violate CDCR policy." *Id.* at 32. Plaintiff was informed that if he "wish[ed] to appeal the decision and/or exhaust administrative remedies, [he] must submit [his] staff complaint through all levels of appeal review up to, and including the Secretary's/Third Level of Review." *Id.* Plaintiff appealed this response and a Third Level Appeal decision was issued on April 24, 2018, approximately four months after Plaintiff filed his amended complaint in this action. *See id.* at 34-35. Plaintiff's appeal was denied, and he was informed that the "decision exhausts the administrative remedy available to the appellant within the CDCR." *Id.*

### c. Grievance Log No. RJD-A-17-06680

On November 16, 2017, Plaintiff filed a grievance, assigned Log No. RJD-A-17-06680, in which he claimed that from August 13, 2017 to the time he filed the grievance, he was "antagonized, threatened, harassed, had sexual comments made towards [him], retaliated against, victim of excessive cell searches, had [his] character defamed with inappropriate comments to third parties (i.e. inmates), denied access to courts, to shower," and denied "access to mental health treatment" by Buenrostro. *See* Vila Decl. at ¶ 7, Ex. E at 49-51. Plaintiff alleged that he "made multiple requests, verbal and in writing, for [Buenrostro] to 'STOP'." *Id.* at 51. Plaintiff further claimed that he

informed Buenrostro's supervisors, who "all said they will talk to him and tell him to stop." *Id.* at 51.

This grievance was "partially granted" on November 27, 2017 at the Second Level of review, but it was determined that staff did not "violate CDCR policy with respect to one or more of the issues appealed." *Id.* at 53. Plaintiff was informed that if he wished to "appeal the decision and/or exhaust administrative remedies, [he] must submit [his] staff complaint through all levels of appeal review up to, and including, the Secretary's/Third Level of Review." *Id.* Plaintiff appealed this decision and it was initially rejected on January 31, 2018 because it was determined his appeal was missing the "CDCR Form 1858, Rights and Responsibilities Statement." *Id.* at 54. Plaintiff cured this defect and a Third Level Appeal decision was ultimately issued on May 1, 2018, approximately four and a half months after Plaintiff filed his amended complaint in this action. *See id.* at 55-56. Plaintiff's appeal was denied, and he was informed that the "decision exhausts the administrative remedy available to the appellate within CDCR." *Id.*

### 2. *Claims against Defendant Steadman*

Plaintiff's claims against Defendant Steadman arise out of events occurring on November 14, 2017, when he was called to medical for the injuries he sustained on November 9, 2017. *See* FAC at 7. Plaintiff told Steadman, a Registered Nurse, that Buenrostro had closed a cell door on him which caused his injuries. *See id.* Plaintiff alleges Steadman accused him of lying and told him that Buenrostro was her friend, questioned his placement in the "EOP," threated to "call [his] clinician," and "kicked [him] out without attending to [his] injuries." *Id.* Afterward, Plaintiff claims Steadman falsified a medical report related to the November 9, 2017 incident. *See id.* at 8.

On November 15, 2017, Plaintiff filed a grievance, assigned Log No. RJD-SC-17000018, in which he alleged that he was "called to medical" for "injuries [he] sustained due to Officer Buenrostro closing [his] cell door on [him]." *See* Gates Decl., Ex. D at 37. Plaintiff was "seen by R.N. Steadman" and explained what happened on November 9, 2017. *Id.* Plaintiff explained to Steadman he had "serious metal issues" and claims

11

Steadman "started antagonizing" him. *Id.* at 39. Plaintiff alleges Steadman told him Buenrostro was her friend and she thought Plaintiff was "lying because he wouldn't do that." *Id.* Plaintiff claims Steadman "kicked [him] out without attending to [his] injuries." *Id.*

Plaintiff received a "Health Care Staff Complaint Response" from the CCHCS on January 26, 2016. *Id.* at 42. It was found that "no further intervention of [Plaintiff's] health care staff complaint is warranted" and staff did not "violate CDCR policy with respect to one or more of the issues grieved." *Id.* Plaintiff was informed that if he "wish[ed] to appeal the decision and/or exhaust administrative remedies, Plaintiff] must submit [his] health care staff complaint for a headquarters' level review." *Id.* at 43. Moreover, he was informed that "[o]nce a decision has been rendered at the headquarters' level, administrative remedies will be considered exhausted." *Id.*

On April 27, 2018, approximately four months after he filed his amended complaint in this action, Plaintiff received a response by the "Health Care Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services." *Id.* at 44. In this response it was stated "[a]fter review, there is no compelling evidence that warrants intervention at the Headquarters' Level of Review as [Plaintiff's] health care staff complaint was processed in accordance" with CDCR policy. *Id.*

### *3. Claims against Defendant Ashbury*

Plaintiff's claims against Defendant Ashbury arise out of an interview Ashbury conducted with Plaintiff regarding his "602 appeal on Defendant Officer [Buenrostro]." Doc. No. 7 at 9. Plaintiff claims that he objected when Ashbury authorized his transfer to Building 2 on grounds that it would be too retaliatory and would "endanger [his] safety because [he] had issues with 2 officers in Building 2." *Id.* at 9-10.

On December 4, 2017, Plaintiff filed a grievance, assigned Log No. RJD-A-17-06640, in which Plaintiff alleged "retaliation by Lieutenant Ashbury." *See* Frijas Decl., Ex. F at 58. Plaintiff claimed that on November 26, 2017, he was "escorted to program

12

office for a second time to speak with Lieutenant Ashbury." *Id.* Ashbury was interviewing Plaintiff regarding the appeals that he filed against Buenrostro. *See id.* at 60. Ashbury told Plaintiff "he was going to move [Plaintiff] and that [Plaintiff] could write an appeal about him on it, so here it is." *Id.* at 60.

This grievance was rejected at the First Level of review on January 11, 2018 because Plaintiff had "exceeded the allowable number of appeals filed in a 14-calendar day period." *Id.* Plaintiff was informed he could "re-submit after 1/25/18." *Id.* Plaintiff appears to have resubmitted his appeal on February 6, 2018. *See id.* at 65. This appeal was again rejected on the grounds that Plaintiff "may not submit a new appeal within 14 calendar days of the previously filed appeal." *Id.* Plaintiff was also cautioned that "continuous submittal of 602's prior to the 14-day period may result in an appeal restriction." *Id.* Plaintiff did resubmit this appeal, but it was rejected once again because Plaintiff "failed to demonstrate a material adverse effect upon [his] welfare." *Id.* at 66. Plaintiff wrote an appeal to this latest decision stating "rules limiting prisoners to a certain number of grievances make remedies unavailable for prisoners over the limit." *Id.*

On March 8, 2018, Plaintiff's appeal was rejected on the ground that it "makes a general allegation but fails to state facts or specify an act or decision consistent with the allegation." *Id.* Even though his previous attempts had been rejected, on September 10, 2018, approximately ten months after he filed his amended complaint in this action, a First Level Appeal Response was issued "partially granting" Plaintiff's grievance and advising him that the issue "may be submitted to the Second Level of Review." *Id.* at 69.

### 4. Analysis

As noted above, "[D]efendant[s]' burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino*, 747 F.3d at 1172. The burden then shifts to Plaintiff "who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191;

13

*Albino*, 747 F.3d at 1172; *Jones*, 549 U.S. at 218. He may do so by "showing the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172 (citation omitted); *see also Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008) (noting potential "unavailability" of administrative remedies if officials "obstruct[ed] [the prisoner's] attempt to exhaust," or "prevented [him] from exhausting because procedures for processing grievances weren't followed."). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross,* 136 S. Ct. at 1858.

Plaintiff was initially incarcerated in 2013 and has since filed "close to 500" administrative grievances. *See* Crenshaw Decl. ¶ 2, Ex. A. Pl.'s Dep. 9:10-11; 108:3-5. Nonetheless, Plaintiff opposes Defendants' motion on the grounds that the prison grievance process was not available to him. According to Plaintiff, Defendant Buenrostro "committed numerous acts and made numerous threats on [Plaintiff's] life and well-being and safety and made good on the threats that had placed Plaintiff in great perpetual fear of his safety that [caused] him to feel he would be killed at any moment especially if he complained about it administratively." Doc. No. 35 at 1.[6]

Plaintiff's assertion is belied by the uncontroverted evidence that Plaintiff did, in fact, file multiple administrative grievances against Defendants, including three separate grievances against Buenrostro which he actively pursued to the third and final level of review. The record before the Court is devoid of any evidence to demonstrate that the prison's administrative grievance process was unavailable to Plaintiff. The Court finds that the evidence presented by Defendants attached to their sworn declarations "meets

---

[6] Plaintiff did not verify his response in opposition to Defendants' motion under penalty of perjury. As such, the Court may not treat it as an affidavit in opposition to summary judgment. *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996).

14

[Defendants'] burden of demonstrating a system of available administrative remedies at the initial step of the *Albino* burden-shifting inquiry." *Williams*, 775 F.3d at 1192.

With respect to his grievance against Defendant Ashbury, Plaintiff argues that he was "prevented from exhausting the Ashbury grievance because of [Defendants] repeated rejections and frivolous reasoning for not accepting it." Doc. No. 35 at 3; *Ross*, 136 S. Ct. at 1860 (noting unavailability may be shown when "prison officials devise procedural systems (including … blind alleys and quagmires …) in order to 'trip[] up all but the most skillful prisoners.'") (quoting *Woodford,* 548 U.S. at 102).

The evidence in the record demonstrates that Plaintiff's grievance as to Ashbury was subjected to several rejections based on CDCR regulations. *See* Frijas Decl., Ex. F at 62-67. However, Plaintiff does not address the fact that Plaintiff's grievance regarding the claims against Ashbury was, ultimately, addressed at the First Level of review. *See id.* at 68-69. Moreover, in his sworn deposition, Plaintiff testifies that he "did not" exhaust this grievance to the Third Level of review. Pl.'s Dep. at 95:23-25. Plaintiff may show that his remedies were "unavailable" by "showing the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Albino*, 747 F.3d at 1172 (citation omitted). However, that is not the case before this Court. Plaintiff was clearly very familiar with the CDCR grievance process, having testified that he filed at least five hundred such grievances over a five-year period.

Plaintiff's own sworn testimony, even viewed in the light most favorable to Plaintiff, does not satisfy Plaintiff's burden of production under *Albino* and *Williams* as it does not demonstrate that administrative remedies were not "available" to him because RJD officials "thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, … in [his] individual case." *Ross*, 136 S. Ct. at 1862. Thus, the Court finds that Defendant Ashbury is entitled to summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies as to the claims against him.

15

As for the claims against Buenrostro and Steadman, it is undisputed that Plaintiff ultimately exhausted his administrative remedies against Buenrostro and Steadman. However, Plaintiff only exhausted his administrative remedies *after* he filed his amended complaint.

Plaintiff filed three grievances[7] against Buenrostro approximately a week before his filed his original complaint initiating this action. Plaintiff filed his grievance[8] against Steadman two days before his filed his original complaint. Prisoners are required to exhaust administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). And while a plaintiff may bring new claims in an amended pleading if those claims are exhausted before the filing of the amended pleading, *see Rhodes v. Robinson*, 621 F.3d 1002, 1006-07 (9th Cir. 2010), Plaintiff did not exhaust his claims before filing his original complaint and he did not exhaust his claims, or any new claims, before he filed his amended complaint. The evidence in the record before the Court shows that Plaintiff exhausted his claims against Defendants Buenrostro and Steadman between March and April 2018 – well over a year after he filed his amended complaint in this action.

Plaintiff does not offer any admissible evidence to dispute Defendant Buenrostro and Steadman's showing that Plaintiff did not exhaust his administrative grievances until months after he filed his original and amended complaints. It is well-settled that a plaintiff may "initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed." *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006).

In sum, Plaintiff's claims against Defendant Ashbury are subject to dismissal without prejudice based on Plaintiff's failure to exhaust the administrative grievance

---

[7] *See* Vila Decl. ¶ 7, Ex. B, C, E.

[8] *See* Gates Decl., Ex. D.

process. Plaintiff's claims against Defendants Buenrostro and Steadman are subject to dismissal without prejudice based on Plaintiff's failure to exhaust his administrative remedies prior to initiating this action or filing his amended complaint. Accordingly, judgment in favor of Defendants is appropriate.

## III. Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment pursuant to 42 U.S.C. § 1997e(a). The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants and close the case.

**IT IS SO ORDERED**.

DATED: March 24, 2020

HON. MICHAEL M. ANELLO
United States District Judge